656 So.2d 200 (1995)
Richard R. JORDAN, M.D., Appellant,
v.
ADVENTIST HEALTH SYSTEM/SUNBELT, INC., Appellee.
No. 94-205.
District Court of Appeal of Florida, Fifth District.
May 19, 1995.
Rehearing Denied June 21, 1995.
*201 Kelvin L. Averbuch, Orlando, for appellant.
George F. Indest, III, and Joseph M. Taraska, of Taraska, Grower, Unger & Ketcham, P.A., Orlando, for appellee, Adventist Health System/Sunbelt, Inc.
James F. Page, Jr., and G. Robertson Dilg, of Gray, Harris & Robinson, P.A., Orlando, for appellee, Joseph L. Riley Anesthesia Associates, P.A.
GRIFFIN, Judge.
Appellant, Richard R. Jordan, M.D. ("Dr. Jordan"), appeals an order of the lower court enforcing a mediation agreement and an order denying a subsequent motion to disqualify the trial judge. We affirm.
Although several issues are raised on appeal, the only one that merits discussion is Dr. Jordan's claim that the mediation agreement with appellee, Adventist Health Systems/Sunbelt, Inc. d/b/a Florida Hospital ("Florida Hospital"), is unenforceable because it fails to comply with the requirements of Florida Rule of Civil Procedure 1.730(b). This rule provides:
(b) Agreement. If an agreement is reached, it shall be reduced to writing and signed by the parties and their counsel, if any. The agreement shall be filed when required by law or with the parties' consent. If the agreement is not filed, a joint notice of dismissal shall be filed. By stipulation of the parties, the agreement may be electronically or stenographically recorded. In such event, the transcript may be filed with the court. (Emphasis added).
After some thirteen to fourteen hours of negotiations, the parties entered into a two-page, typewritten "preliminary settlement agreement." It was executed by Dr. Jordan, an authorized agent of Florida Hospital, and by each of the other individual defendants in the pending litigation. Contrary to the requirements of the above-quoted mediation rule, however, the document was not signed by counsel. This omission is unexplained in the record.[1] The agreement covers a variety of issues and contains sufficient detail concerning the settlement reached among the parties to be enforced. Yet, the agreement also expressly provided that it would be "prepared in final form through the parties [sic] attorneys and mediator and executed by all parties within two weeks of date."
The record is clear that after execution of the settlement agreement, all parties and their counsel operated under it and attempted to generate a final document. After the passage of several weeks, however, when no final settlement document was approved, Florida Hospital filed in the lower court a motion to enforce the "preliminary settlement agreement." Dr. Jordan opposed this motion in the lower court on several grounds, principally that the "preliminary settlement agreement" was unenforceable as a final agreement because certain material terms of the agreement either were not contained in the agreement or were not set forth with *202 sufficient specificity. Further, it was contended that Florida Hospital had breached a material provision of the agreement assuring confidentiality by filing it in the circuit court. Counsel for Dr. Jordan did not urge below that the document was unenforceable on its face because of the absence of the signatures of the attorneys. The lower court rejected Dr. Jordan's objections and entered its order enforcing the agreement. Thereafter, Dr. Jordan obtained new counsel who filed multiple motions in an effort to undo the lower court's order. It was in a so-called "amended" motion for rehearing, filed on October 18, 1993, where this issue of the lack of signatures of the parties' counsel was first raised.
A related issue was considered by the Third District in Gordon v. Royal Caribbean Cruises, Ltd., 641 So.2d 515 (Fla. 3d DCA 1994). There, the Third District Court of Appeal considered the validity of a mediation agreement which had been signed by an attorney in the presence of his client, but which had not been executed by the client. The court found the agreement to be unenforceable, explaining:
In order for a settlement agreement reached during mediation to be binding, Fla.R.Civ.P. 1.730 clearly mandates that it be reduced to writing and executed both by the parties and their respective counsel, if any. We find that an attorney's signature alone, albeit in the presence of the client, is wholly insufficient under this rule. The cases relied upon by ROYAL CARIBBEAN, Nichols v. Martell, 612 So.2d 657 (Fla. 3d DCA 1993); Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla. 4th DCA 1982); Bruce Investment Corp. v. Beider, 400 So.2d 808 (Fla. 3d DCA 1981) did not involve settlement agreements reached during court ordered mediation and accordingly, are inapposite herein.
Id. at 517 (emphasis in original).
Gordon, of course, is different from the case at hand because the Gordon court was faced with an agreement that had not been executed by the parties to be bound by the agreement. In this case, on the other hand, the parties to be bound did execute the document; but for the mediation rule, the missing signatures would be superfluous. This court, thus far, has declined to permit a litigant to avoid commitments made in mediation by relying on one of the many technical details of the mediation rules in cases where the litigant has operated under the agreement. See Western Waste Indus., Inc. of Florida v. Achord, 632 So.2d 680 (Fla. 5th DCA 1994).
AFFIRMED.
PETERSON, J., concurs.
THOMPSON, J., concurs specially, with opinion.
THOMPSON, Judge, concurring specially.
I agree with this court's opinion. I write specially only because I do not want this opinion to be construed to mean that a mediation agreement will be enforced if essential signatures are absent from the agreement. I accept and support the dictate of rule 1.790 requiring mediation agreements, in order to be binding, to have the required signatures of counsel. Fla.R.Civ.P. 1.790. In this case, however, despite counsel's missing signatures, there is no doubt that counsel participated in the mediation and acquiesced to the agreement.
The record indicates that mediation was held on Sunday, 18 July 1993, for approximately 14 hours. All of the parties were represented by counsel during the mediation. Before the final draft of the "preliminary settlement agreement" was signed, it was revised and typed several times. The final draft was reviewed and signed by all of the parties, but not by their counsel. The day after the agreement was signed, the mediator sent the participants and their counsel a letter thanking them for their efforts and diligence in solving a vexatious problem. He stated, "I think we reached a very good settlement, and you are each to be commended."
All of the parties assumed that the agreement was binding upon them, including Dr. Jordan and his counsel.[1] Counsel for the *203 participants communicated by letter and by phone to implement the terms of the preliminary settlement agreement, including setting a terms of the preliminary settlement agreement, including setting a schedule for document disclosure. During the mediation, and for a time after the mediation, Dr. Jordan was represented by the two lawyers who filed the original lawsuit. The two lawyers conducted themselves as though the agreement was signed and binding upon all the parties. They provided tax returns to the mediator pursuant to the settlement agreement and canceled pending discovery requests.
I agree that, under the facts of this case, the mediation agreement should be enforced because the settlement agreement contained all of the essential terms necessary to settle the pending lawsuit and because the parties ratified the agreement with their actions. See In re Sav-A-Stop Inc., 124 B.R. 356, 358-59 (Bankr.M.D.Fla. 1991) (a settlement agreement is an enforceable contract when it sets forth the essential terms of the settlement and is sufficiently specific; additionally, the fact that an agreement may provide that a future more specific agreement will be entered into later, or that it expresses the idea that something is left to a future agreement and it is an agreement to agree, does not affect the enforceability of the original agreement); Stempel v. Stempel, 633 So.2d 26 (Fla. 4th DCA) (trial courts can enforce a "barest" bare bones agreement to which the parties have agreed), cause dismissed, 639 So.2d 982 (Fla. 1994). Further, because the parties substantially complied with the mediation rules, the absence of counsel's signatures should not impede enforcement of the agreement. See, e.g., Patry v. Capps, 633 So.2d 9, 11 (Fla. 1994) (substantial compliance with the mode of service required by a statute is sufficient to meet the legislative purpose of early resolution of medical malpractice lawsuits). Dr. Jordan should not be able to avoid the enforcement of an agreement that he and his lawyers accepted and ratified by their actions. See Western Waste Indus. v. Achord, 632 So.2d 680 (Fla. 5th DCA 1994). I would not, however, extend this court's holding beyond the facts of this case.
NOTES
[1] Predictably, the mediation rules are developing sufficient complexity and have experienced such frequent amendment that even those most familiar with them seem to have difficulty following their requirements.
[1] During the hearing to enforce the agreement, Dr. Jordan testified that "the agreement speaks for itself. I signed it." He also testified that his lawyers recommended he sign it.